Please be seated. Good afternoon. We're here for oral argument in regard to the Office Of The Alabama Attorney General, Assistant Attorney General Lauren Simpson, and Edmund Gerard LaCour, Jr. is here for the Attorney General, and Stephen Marshall is here for the Attorney General, and Christina Karam is here as the appointed amicus attorney in support of the district court's order. And Mr. LaCour, you may begin. Thank you, General Wilson, and may it please the Court. Rule 11 serves the important but limited purpose of discouraging objectively frivolous filings. Thus, Rule 11b3 requires an attorney to certify only that factual contentions she makes have some evidentiary support. Not that the factual contentions have undisputed factual support or overwhelming support, nor that the Court will ultimately agree with those factual contentions at the end of a case, but that some evidence supports those contentions. As this Court held in Davis v. Carl in 1990, even weak, self-serving evidence clears Rule 11b3's low bar. That's because, quoting from Davis, Rule 11 is intended to deter claims with no factual basis at all, close quote. We don't have that here, though, do we? And we have a repeated false assertion of a verifiable fact. I would strongly dispute that, Your Honor. We don't know exactly what happened. And this notion of a verifiable fact, too, I think was drawn from iParametrics, the one case that the district court cited for the district court's akin-to-contempt holding. iParametrics was a case where the district court issued a judgment against two defendants, but not against the third defendant, John Meyer. And then Mr. Stevens, the attorney, went to court and tried to get rid of, and succeeded in getting rid of, execution against John Meyer, despite the fact that you could go and you could look at that judgment from the district court and conclusively determine . . . But the court, I mean, it's clear on this record that the warden, Ms. Stewart, did not decide on her own to distribute the form as a courtesy. That's clear on this record that she did not do that, and there was that factual assertion in the pleadings by Ms. Simpson. I mean, that's clear on this record, isn't it? Two points, Your Honor. One is, we have at least three or four pieces of circumstantial evidence that we knew at the time that supported the factual assertion that Warden Stewart had made this decision by herself. And so, I think that alone shows that it's not necessarily clear that Warden Stewart received an order from Maine DOC headquarters. Keep in mind, she is the top official at Holden, and she testified in her interrogatories. I think it's important to look at this, and these are the interrogatories that Ms. Simpson and the Attorney General's Office had in front of them when they made this assertion that this was the warden's call. She was asked, this is interrogatory number 14, if you look at District Court Docket Entry 126-1, you'll find this on pages 4 through 5. She was asked, describe the notice, if any, that the Department of Corrections provided Christopher Lee Price that the State of Alabama would not seek to execute Mr. Price using lethal injection drugs if he elected nitrogen hypoxia as his method of execution prior to July 1, 2018. Warden Stewart replied, defendant is unaware, defendant being Warden Stewart, is unaware of the existence of such notice as described in this interrogatory. Further, defendant is aware that the Department of Corrections gave no particular notice of Act 2018-353 or the election period to Price or his counsel, nor to any other inmate or defendant. Act 2018-353 is itself public notice, and then she says, however, Price was given a nitrogen hypoxia election form at this defendant's directive during June 2018. That form stated, pursuant to Act number 2018-353, and then goes on to quote the rest of the form. And so, right there, you have Warden Stewart swearing that she was aware, affirmatively aware, no notice of the passage of Act 2018-353, went out from DOC, but then saying, I, the Warden, distribute to my wards at the facility that I run a form that reads, pursuant to Act number 2018-353. Now, it might not be the only possible reading to conclude that she was the one who took the initiative to send out this form, but it's certainly a reasonable reading of the interrogatory. And so, it is circumstantial evidence to support the factual assertion. I think that's the fundamental mistake that the district court made on page 9 of its sanctions order. Mr. LaCour, what the district court said was, that statement that she sent this out at her direction says nothing about whether someone directed her to give that directive. What's your response to that concern? A few, Your Honor. One is, this isn't the only statement itself. The second is, she did appear to draw a distinction between notice from DOC and notice from herself, and she was the top official at Holman. So, if you think about a different agency, we might be more familiar with the Department of Justice. You've got Maine Justice in D.C., and you've got your U.S. Attorney's offices out in the field. And if there was a particular sort of prosecution that went forward in a surprising manner, and you did an inquiry, and you talked to the people in D.C., and you said, and they said, we are not going to authorize a prosecution like this. And then the prosecution goes forward, and you talk to them again in D.C., and they say, we were surprised to find out that these charges were filed. And then you talk to the U.S. Attorney, who's running the office, and she says, in this assistant U.S. attorney, to bring these charges? Well, then it's clearly circumstantial evidence to support the notion that it was the U.S. Attorney's decision. And we've got something exactly like that here. When you look at the interrogatories, when you also look at an investigation that Ms. Simpson carried out during the Price litigation, where she talked to DOC Legal, and they said, we've made a firm decision not to send out a form. Wasn't there also, even before that, notice from the Alabama Department of Corrections to the Attorney General's office that the DOC would not be providing any forms as an institutionalized matter? Yes, Your Honor. So that's sort of the equivalent of a criminal attorney going and talking to make justice, and then saying, we're not going to do this. And then you find out it's happened, which is what happened here, and they said, DOC Legal said, we're surprised this form, which has a discourse that had legalese on it, had gone out. I'm somewhat sympathetic to your positions in this case, but what a mess the state of Alabama has made by not doing adequate record keeping. What a mess you've caused for everybody. Nothing on paper, no directions on paper, no record of the log of who turned in these forms regardless of who submitted them. Everything is shrouded in mystery. Maybe that's the way the state of Alabama wanted it to be, but boy, you're paying the dues now. That's just a comment and an aside. This would have been all taken care of had the state of Alabama done this in a way that was open and transparent to everybody. Letter from ADOC to the Alabama Attorney General's office, we are not doing anything institutionalized. No from Ward and Stewart to anybody else, I'm doing this on my own, here's what we're doing. A log of who turned it in, a log of who got the forms, there's nothing. And that's your problem in this case, because you have nothing on paper with regards to and you have factual findings made by a district court judge after an evidentiary hearing. Your Honor, I would agree, and we've litigated, as this panel is well aware, we've litigated some of these issues on the merits. I don't think we're just here on ADOC's procedures and the fairness of them or whatnot. I'm aware that- You're not. I'm just saying that regardless of what those procedures were, and whether they were the Everybody. And there is no such thing in this case. Everything is a mystery. Everything is what might have something have been, what could it have been, what did somebody do, what did somebody not do, what did somebody think, what did somebody not think? And there's nothing on paper. Nothing. Well, Your Honor, I do want to make a point. You mentioned factual findings. The facts aren't really in dispute here. If you look again at page nine of the district court opinion, and the district court heard from Assistant Attorney General Simpson, didn't find that she was being incredible. She credited all of those factual assertions. The issue that the district court had was that the court didn't think that those facts that had been established lended any support to the additional assertion that this was ultimately the warden's decision. But I think the district court made clear and obvious error there because clearly- You can look at it either way, Your Honor. You say there's no dispute about the facts. If there's no dispute about the facts, then you're only challenging legal error, not factual error. Correct. I think the problem is that we all agree, the district court agreed too, that Ms. Simpson had this discussion with DOC before price litigation began, discussed with them after the fact, after the form had gone out, this fact, and learned that they were surprised. Had Captain Emberton's affidavit in front of her and had these signed and sworn interrogatory responses in front of her. All of that is undisputed. The question is, is that some evidence to support the notion that this was the warden's decision to do that? Obviously, it is some evidence. If you took out any one of those facts, it would be less likely that a warden made this call on her own. I'm sorry, Judge Walker. It could be some evidence, but it seems to me what troubled the district court in this case is that when a lawyer signs a pleading and files it in court, there's an obligation to conduct a reasonable inquiry in order to verify that the facts in there are correct. The court could have entered a clearly erroneous finding of fact if the mistake had not been uncovered. And that's what Rule 11 is all about. You have an obligation to verify the facts in your pleading. And that appears to be what troubled the court in this case. And she made a finding that was based on recklessness. But she clearly misapplied this court's precedents because Davis says... What precedent? Even the evidence is enough. What precedent? Which precedent did she... Davis and Carl, Worldwide Primates, Kaplan. Kaplan was the name of the... Yes, Kaplan. And that's why, particularly in a sua sponte context, you review this record with particular stringency. In Kaplan, we stopped short of determining what mens rea is required to establish akin to contempt. Didn't we? You didn't. So, if we... I mean, how do we say that the district court abused her discretion if she made the best attempt that she could to determine what mens rea is required for akin to contempt based upon what she had? Your Honor, you don't even need to get into the mens rea question. You just need to look and see, were we held to the same standard as you would normally see in a normal Rule 11 context? Or was the standard more forgiving, as this court has said it should be in a sua sponte proceeding where the judge is both judge and prosecutor? And clearly, we were held to a more stringent standard. The district court said, in a case like this involving the death penalty, you need to basically take a belt and suspenders approach before you issue a factual assertion. There's no basis for that in the text of Rule 11 or in this court's normal Rule 11 precedent before you even get into the akin to contempt standard. Well, the First and the Fifth Circuits establish a lower bar for district courts, don't they? But, Your Honor... Than the bar that you're suggesting that the court should have... No one has asked for this court to overrule Kaplan, and that is still the precedent that controls here, which the court said clearly. It didn't answer the mens rea question, but it did say some sort of higher standards were required in Kaplan. They reversed a sanctions order. I mean, it just comes back to the fact that was there some evidence in 2019 and 2020... So, is our precedent clear then? Is our precedent clear if we didn't go that far in Kaplan versus Daimler-Chrysler? I think it's clear that you've... We don't know. I mean, our precedent doesn't tell us whether or not subjective bad faith will support a sua sponte sanction or a lower bar like reasonableness under the circumstances. It doesn't tell us that, does it? We know reasonableness under the circumstances can't get you there because that's the same standard applied in normal Rule 11 cases. So, it has to be something more than that. You haven't answered the question... Well, why not? The First and the Fifth Circuits comply with that standard? Correct, but they don't have Kaplan on the books as precedent, Your Honor. Now, obviously, the in re penny decision from the Second Circuit has not yet been adopted nor foreclosed by this Court's precedent, but this Court has made it clear... With a strong dissent, Judge. Is it Underwood? Yes, Your Honor. There is certainly a dissent there that makes cogent points, but there are cogent points on the other side. I mean, after all, the whole purpose of the 1993 amendments was to correct the errors of the 1983 version of the rules where you had attorneys who were incentivized to cling to questionable factual assertions later in litigation when new facts came out in discovery, which is not an uncommon occurrence. It's why we have discovery in litigation. But under the 1983 version of the rules, if new evidence came forward, one of the worst things you could do would be to go tell the Court about it and say, this assertion we made based on undisputed facts at the time is now disputed. How do we... Because that would be evidence that you violated Rule 11. And so 1993 amendments came in to kind of remove that perverse incentive, which we think the District Court has reintroduced. What do we do with the fact that the drafters removed the subjective bad faith requirement from Rule 11 when it was amended in 1983? That's certainly some textual evidence that the subjective bad faith might not be the correct standard for sua sponte sanctions. But on the other side of that, you have the structure of the 1993 amendments. You have the comments that say akin to contempt. And if you look at a case like Purchasing Power from this Court's precedent, which is not a Rule 11 case but involves inherent authority sanctions, the Court said to unlock because inherent authority sanctions are in place so that a court doesn't have to resort to contempt. So if you have something that looks like contempt, you can use inherent authority sanctions to address it. And here, if you have something that is akin to contempt of court under Rule 11, it would make sense that a similar standard would apply in that context and would at least provide some more clarity to courts and to litigants. But if we get back to this idea, I think the key mistake here is still on page 9 of that This is no factual support whatsoever for the assertion. That cannot be right. Imagine a world in which Warden Stewart was unavailable or never testified. But we still had DOC legal statements. We still had Emberton's affidavit. We still have the fact, I mean, if you look at the election form itself, this does not look like something that came down from on high at DOC headquarters. It was created by the federal defenders and introduced by them into Holman. Part of the problem, at least from an analytical standpoint, is that the state adopted Warden Stewart's position as a factual matter in the litigation. And that jars against the notion that she may have been mistaken in her testimony and that there's a wealth of other evidence which cuts against it. But, Your Honor, I think you're applying hindsight there. I mean, the rules are clear. You shouldn't be applying. Well, let's not play hindsight. So let's say that in this case, any attorney from the Attorney General's office who was had spoken to everybody at the Attorney General's office, had spoken to everybody at Holman, and then had spoken to Warden Stewart. And the factual landscape is exactly as it is today. What would that attorney have been allowed to do in making a representation to the district court? That attorney would have had some evidence to support the factual assertion that Warden Stewart made the decision herself. Or it could have been something different, too. That attorney would have had some evidence to support the factual assertion that Warden Stewart got instruction. And then it goes to a fact finder. And that's why the rules, the comments to the rules say, if you have enough evidence to get past summary judgment, then you're free and clear under Rule 11b-3. And we clearly have. Let me explore that with you a little bit, because you're focusing on whether or not the factual contingent had some evidentiary support. But the language before that in the rule says that the attorney must have knowledge, information, and belief formed after an inquiry reasonable under the circumstances. And then you have the advisory committee notes, which make clear that the reasonable inquiry requirement is an affirmative duty. And if that duty is violated, the court should have the discretion to impose sanctions. So let's suppose I agree with you that there's some evidentiary support for the contention. Why is it not a violation of Rule 11 that no reasonable inquiry was performed? And specifically, what the district court pointed to was the fact that the warden worked for the Department of Corrections. She was right there. There's no reason to suggest, there's nothing to suggest why she couldn't, they couldn't have, she couldn't have been questioned about this earlier on in the inquiry. Three points. Judge Pryor, I'll try to make sure I don't lose all of them as I go. The first is, once that inquiry has yielded some evidence, I think as a matter of law, it's reasonable under the circumstances. I think that's why if you look at... No matter, even if you find out, even if you find out before making the representation that that may be wrong? You still have some evidence at that point, yes. And that ultimately goes to the fact finder. If we discover... But even if you think, I'm sorry to cut in on Judge Pryor's question, but even if you think that your witness is lying? If you're convinced that they're wrong, then that goes more to the subject of the fact finder issue. But if it's not clear, and you've got some evidence on one side and some on the other, then you're able to move forward and you're able to deny the assertion like we did in the answer here. We don't have to conduct the full inquiry before we file an answer. We don't have to uncover and build a case for our opponent in litigation. We have some evidence, and that's enough. All right. But let's go back to the main part of my question, which was, even supposing there's some evidence, is the failure to conduct a reasonable inquiry sanctionable by itself? It's not clear to me under this Court's precedent that it would be. If you look at World Wide Primate, this Court talks about a two-pronged approach. The first prong is, was the statement objectively frivolous? And only if you clear that first prong do you get to the second inquiry where the reasonableness of the inquiry can still forgive the lawyer's action of making that objectively frivolous statement. So, say they make a statement that's objectively frivolous, but then you conduct that pronged two inquiry, and you made the statement because your client lied to you and there's no way that you could discover it or an objectively reasonable lawyer wouldn't have discovered that fraud. Or, you're working under a very tight time frame. That can forgive you for having made that objectively frivolous statement. But here we don't have an objectively frivolous statement. We don't have that deliberate indifference to obvious facts that this Court spoke about in days of no obvious facts suggesting that Warden Stewart had gotten direction from headquarters. All the facts seem to suggest quite the opposite until three years after the forms went out we first heard about this at the deposition. So, in this record, there's no evidence that Simpson spoke with Stewart before the motion to dismiss was filed? Other attorneys at DOC Legal had worked with Stewart during the price litigation as the interrogatory process went forward. So, the answer to my question is no, Simpson didn't speak with Stewart at all before the motion to dismiss was filed? There was a hearing on the motion to dismiss also, right? There was a hearing on the motion to dismiss where the only factual issues that would have been important would have been those alleged in the complaint. But I'm looking at the district court's order now, and the court says I don't see anything in the record that indicates that there was any deliberative process by the DOC before it passed out a form that had legalese written on it. And then this is what Ms. Simpson responded. She said, no, Your Honor, my understanding of the situation is the Warden took it upon herself and did this without consultation with DOC Legal. She simply saw the form that came into the prison, saw it was there, and decided to pass out to every death row inmate. I mean, that's a pretty definite incorrect statement. Your Honor, she said, my understanding, so she qualified it at the outset. And then there was her understanding. She talked to DOC Legal. And I don't think Rule 11 has ever been applied to require any one attorney to talk to every single witness involved in every single case. That's an impossible burden to bear. Please keep in mind, in February – What about the person who passed out the notice? I mean, that's not every single person. That's the person. Right. And DOC Legal talked to that person. And Ms. Simpson talked to Captain Emberton. And keep in mind, this was one of three 1983 actions pending in the Middle District at the time that Ms. Simpson was trying to handle on behalf of the State of Alabama. We had a fourth proceeding going on in the State Court, all on the February 11th election, execution date looming. And, again, to return to your point that seemed to be very important to the District Court, the District Court, with the benefit of hindsight, said, how hard would it be to call Warden Stewart up on the phone? Well, there's a lot going on in litigation. Every minute you spend gilding the lily or doing a belt and suspenders approach is a minute you're not going to have to investigate these novel ADA claims, these novel RLUIPA claims, these novel challenges to the COVID protocols for visitors at the execution site. And so it's not costless. And that's why Rule 1 says read every one of these rules, including Rule 11, to promote the just, the inexpensive, and the speedy resolution of matters. And if you're reading it to require a belt and suspenders approach for lawyers, that an investigation in one case is no longer going to count just because a new case comes along, you're going to totally go contrary to Rule 1. And it's going to do a grave injustice because we have a dedicated public servant here who's under Rule 11, who has been subject to this cloud hanging overhead for more than a year. This order should be vacated. All right. Thank you, Mr. LaCour. Ms. Karam, you may proceed. Good afternoon, Your Honors, and may it please the Court. My name is Christina Karam. I'm an attorney at Petrolo Klein & Boxer, and I was appointed as amicus counsel by this court to defend the district courts in position of Rule 11 sanctions in this case. This court should affirm the district court's imposition of sanctions. And to a point Judge Wilson made, the district court needs to be able to rely on the factual representations of counsel. Otherwise, it will enter clearly erroneous findings of fact. And here, it was not an abuse of discretion for the district court to impose sanctions based on appellant's inaccurate representations in this case, which were not singular or trivial, but numerous and consequential. Specifically, the district court sanctioned appellants based on three instances of inaccurate representations about why Gordon Stewart ordered the distribution of nitrogen hypoxia election forms at Holman. And these representations were the basis of appellant's legal argument to dispose of Mr. Smith's Americans with Disabilities Act claim, which he brought in the context of death penalty litigation, and which depended in part on whether the form's distribution was a state agency decision. So first, Your Honors, in a motion to dismiss Mr. Smith's ADA claim, appellants represented that Gordon Stewart directed Captain Emberton to distribute the election forms as a courtesy to the inmates at Holman. And they made the legal argument that simply passing out a form to inmates as a courtesy at the end of the election period did not establish a program under the ADA. And then in oral argument on that motion to dismiss, appellants represented that Gordon Stewart, having seen the federal defender's election form, took it upon herself to make sure that every inmate had a copy, and they again said that she did so as a courtesy to the inmates at Holman. And third, in answering Mr. Smith's amended complaint, appellants denied Mr. Smith's allegation that the Alabama Department of Corrections had adopted the federal defender's election form so as to establish a program under the ADA, and stated that Gordon Stewart directed on her own initiative that a copy of the form be passed out to all death row inmates at Holman. In light of, so here, there are two problems, potential problems with the district court's viewing of the entire evidentiary record from my perspective. One is that attorneys at the Attorney General's office had been told by the Alabama Department of Corrections soon after the nitrogen hypoxia law was passed that it would not be instituting any universal procedures to hand out any election forms or the like. That's undisputed in the record, right? Yes, Your Honor. So that's one. And then you have Gordon Stewart submitting interrogatories under oath where she says that she undertook something. She doesn't say she did it on her own, but she says she took some steps to make sure that this election form was passed out. But in those same interrogatories, she explains that the Alabama Department of Corrections did not have a policy of doing that. So if you put those two things together, why isn't it reasonable for Ms. Simpson to have said that Gordon Stewart did this on her own, of her own initiative? Yes, Your Honor. So there are two issues there. So one, I think that the district court said that even if that prior investigation in the Price litigation was reasonable, and I'm saying that even if that inference itself could have been a reasonable inference that she could have drawn back then, it was no longer reasonable to rely on that Price investigation in the context of Smith in light of the legal argument that counsel and appellants were making to dispose of Mr. Smith's Americans with Disabilities Act claim. And the standard, Your Honor, focuses on what was reasonably knowable at the time the assertion was made. And that's a standard that I and appellants agree upon. It's in both of our briefs. It's what the district court applied. And as Judge Wilson pointed out, it was a readily verifiable fact. Warden Stewart, at all times, was an employee of the Alabama Department of Corrections. She was easy access to counsel. So counsel, as the district court found, could have easily called her up, could have easily talked to her. But counsel and appellants never talked to Warden Stewart before making these representations. If she had talked to Warden Stewart, and Warden Stewart had told her the same thing that she later testified about at her deposition, and Ms. Simpson had talked to everybody at ADOC, at the Attorney Alabama General's Office, and had thought, I think Warden Stewart is mistaken, and had made the same representation, could she be sanctioned? So if she had had all the evidence before her... Same evidence she has now, but she speaks to Warden Stewart, and Warden Stewart says, I spoke to somebody on top of me in the hierarchy, but can't remember who it was, can't give you any names, don't have a memory of that. She talks to everybody at ADOC and the Attorney General's Office, and everybody tells her, absolutely not. Nobody gave her any such instructions. We have no policy of handing this out. We were not going to provide notice to the inmates in terms of a written election form. And she decides, you know, given everything I've seen, I think Warden Stewart's memory must be off. So I'm going to represent to the court that she did it on her own. It turns out later, the district court finds that as a factual matter, that Warden Stewart's memory is accurate, and that she was authorized or told by somebody above her to do what she did. Could Ms. Simpson be sanctioned? I think that that would be a harder case. I know. That's why I'm asking you. Of course, Your Honor. I think that at that point, a court could conclude that her investigation was reasonable because she spoke to Warden Stewart before making that assertion, and that was the issue here, that she made the assertion without ever speaking to her. Though at that point— But the assertion would be exactly the same. The only thing you're talking about then is the reasonableness of the investigation, but the fact that's asserted would be exactly the same, so you don't even get to reasonable investigation. I think, Your Honor, at that point, you would be closer to the statements in Davis that at that point, it's weak evidence, and maybe she's representing something that is weak, but she would have at least done the inquiry. I think the issue, as Judges Wilson and Pryor were getting at, that the issue is that you can't divorce, under the language of Rule 11, the reasonableness of the inquiry from that evidence. So in your— But you don't get to—I'm going to give you a crazy hypothetical, okay? Yes, Your Honor. Can you divorce from the facts of this case? A lawyer makes something up in a pleading. Completely makes it up. Turns out that the lawyer, by the grace of God, is 100 percent right. The made-up factual assertion is 100 percent correct. Can sanctions be imposed? Yes, Your Honor, because— For what? For a failure to conduct a reasonable inquiry before making that statement, because— Even though the facts are correct? That's correct, Your Honor. You think there's case law for that proposition, that you can impose Rule 11 sanctions for a fact that is actually correct, but was made without reasonable investigation? I think that the language of Rule 11 focuses on—well, the language of Rule 11, the advisory committee's notes note that there's an affirmative duty to conduct a reasonable investigation. Absolutely. But if there's—if you got lucky, can you be sanctioned? It's sort of like someone who is really acting recklessly in tort law, but doesn't cause any harm. You swing a bat, but you don't hit anybody. Can you be sued in tort? The answer is usually no, because nobody got hurt. And I think, Your Honor, that the courts are clear, and this Court is clear, that you can't use the wisdom of hindsight. So the fact that no one was harmed, the fact that you got lucky, the fact that you were right, doesn't change the fact that at the time, you had this duty under Rule 11 to conduct a reasonable investigation. And you certify that to the best of your knowledge and belief, formed after that reasonable investigation, the claims you're making have—the facts you're putting before the Court, the claims you're making have evidentiary support. So you completely made it up, but got lucky. You're not fulfilling your Rule 11 duty. And I think that there hasn't been a case—the lack of precedence, because there hasn't been a case in which the inquiry is so divorced from—or the lack of inquiry is so divorced from, you know, the character of the evidence, whether it's— The reason I ask is because we have some cases, like worldwide primates, which indicate that there are two elements to a Rule 11 violation, right? And the first one is that there is something that is untrue, right? False. In some sort of objectively verifiable way. And then number two is you didn't—you, the lawyer, didn't investigate the way you should have. And I'm wondering whether those two are part of the same inquiry or whether they're separate elements. In other words, if you don't have one, can you have a Rule 11 violation? Well, I think, Your Honor, that the question of whether it's a verifiable fact in this case, it—whether Warden Stewart acted on her own or whether she acted pursuant to the instructions of someone above her was a verifiable fact, because she later testified in no uncertain terms that she did not do this all on her own, and— What if she was mistaken in her testimony? And that may not be something for us to be able to get into, given the District Court's factual findings and the position that the State of Alabama took in the underlying litigation. But what if Warden Stewart was mistaken in her testimony? What does a lawyer do with that? Well, Your Honor, the—the appellants made the decision at that point that they were going to adopt the position of Warden Stewart, because to do so would be to insinuate that she was lying under oath in her deposition. They were caught between a proverbial rock and a hard place. Yes, Your Honor. They—but they made that decision. They could have disputed it. They could have said, actually, I think she's completely wrong, based on kind of the mess of facts that you were pointing out. But they made the decision to adopt that position, and then the question is whether it was reasonably knowable at the time what she would say in her deposition, that she didn't do this all on her own, that she was instructed from someone above her. And that is objectively reasonably knowable at the time, because— So if the Attorney—if the Attorney General's office had taken the position that she was mistaken, Ms. Simpson could not be sanctioned? At that point— That seems to be where you're headed.  That's correct, Your Honor. So if the Alabama Attorney General's office says, we're going to continue with our claim— I don't mean that in a bad way—our assertion that this was done by Warden Stewart on her own, and there was no service provided under the Americans with Disabilities Act, you can disregard her testimony that she was ordered by somebody on high because that didn't happen. You couldn't impose sanctions on Ms. Simpson then? Despite the fact that her investigation would have been the same in both scenarios? I think that once you had Warden Stewart's testimony contradicting— contradicting the position that the Alabama Attorney General's office had disposed since 2019, then that makes—then that's the fact that you need to focus on. Even if—okay, so now the Alabama—different hypothetical. Alabama Attorney General says, we're sorry to say this to you, but Warden Stewart is lying. Now can Ms. Simpson be sanctioned? I still think that sanctions could be appropriate because appellants made no attempt to verify this fact before they represented it on three separate occasions, and it was an easily verifiable fact. Even though they believe that she's not telling the truth, and their representation would have been the same no matter what?  That's a broad Rule 11. Because now you're saying, no matter what the witness says, whether or not we believe the witness's statement, if you don't have a reasonable investigation, Rule 11 sanctions can be imposed. And that means that you are almost—again, I'm using worldwide primates as an example. It may not be the only case that says that you need some misstatement, something that is just wrong before you get into whether or not there was a reasonable investigation. Well, Your Honor, I think even under hypothetical, you still have a statement that is wrong because— Not if the state doesn't believe it. If the attorney general's office interviews the warden, she tells him X, and they say after their investigation, you're lying. Are they required to put forth the warden's version of events to the district court? Think of a prosecutor. Prosecutor interviews a police officer. There are four police officers at the scene. Three of them tell one story. One of them tells a vastly different story. The prosecutor investigates, talks to everybody, and says, that fourth police officer, I don't think he's telling the truth. They believe the three, they disbelieve the one. They assert to the district court that the story told, the version told by the three is the correct one. Do they have to tell the district court about the story told by the fourth? No, Your Honor, I do not believe so. Can they be sanctioned under Rule 11? The district court later finds, by the way, that the story told by the fourth is the correct version of events. Can the prosecutor be sanctioned? No, Your Honor, and I think in that circumstance, you have kind of the leeway that Rule 11 provides, depending on the stage of the litigation. So, and this is something that, you know, I think is key, because appellants keep saying that this was pre-discovery. But in the case, in the hypothetical you're talking about, this is an investigation. You interview four police officers. You believe one version said by three. Later it turns out that the one that you disregarded at the investigation stage turned out to be correct. That's a case where you had potentially weak evidence and a reasonable inquiry. You had strong evidence. You believed the three over the one. Potentially even strong evidence, but even if someone later said, you know, maybe this was weak evidence, you had this fourth one that kind of put a chink in the armor, then that's still, you still conducted a reasonable inquiry because you talked to all these people. So this is a very different circumstance because, one, even though, I mean, appellants have said this is pre-discovery, but at all times they had access to Warden Stewart, at all times an employee of their client. So it would be like not investigating any police officers and just going out and saying, well, I think they did this, versus actually talking to those four police officers. I've taken up way too much of your time. Thank you for answering my questions. Of course. Thank you very much. So I think the district court's view that counsel's conduct here was not, counsel and appellant's conduct here was not reasonable under the circumstances, came down to three findings of fact, and none were clearly erroneous. The district court found that there was no inquiry made before appellants represented to the district court that Warden Stewart acted on her own. And this cannot be clearly erroneous because counsel herself admitted this below. This was the representation before the district court. And I outlined that on pages 25 to 26 of my response brief. But just to highlight a few of them, docket entry 126, which is counsel's response to the district court's show cause order, counsel sought and received confirmation that the forms had been distributed from Captain Emberton. Counsel conducted no further investigation into the question of why Warden Stewart had ordered Captain Emberton to pass out the forms, as the issue of relevance was that Warden Stewart had given the order. And then again, at the show cause hearing, counsel explained that she did not investigate how the decision to distribute the forms came to be, because at the time, the relevant inquiry in Price was not why the form was passed out, but rather whether notice had been given to Mr. Price. So it cannot be clearly erroneous to draw the same conclusion that counsel put forth before the district court. I never looked into why. I made a representation about why, and I never looked into why. So the court made a determination that counsel's conduct was not reasonable under the circumstances. That's correct, Your Honor. Is that the standard in our circuit? Yes, Your Honor. So Kaplan said that in order to impose sanctions sua sponte, the offending conduct has to be akin to contempt. Now Kaplan never defined what that meant. But importantly, it said it joined in the akin to contempt interpretation of the circuits that it cited in that opinion. And so there are three that Kaplan cited in that opinion. The Fourth Circuit, the Eighth Circuit, and the Ninth Circuit. And they all say the same thing, that it's the same Rule 11B, general reasonableness under the circumstances standard, but applied with, it's the same variation, extra care in the Fourth Circuit, particular strictness in the Eighth Circuit, or particular stringency in the Ninth Circuit. So same standard, applied with extra care. So the attorney generals, their argument, their primary argument is that the court applied the wrong standard. And so their argument is that the correct standard would be the standard that applies in the Second Circuit. It requires a finding of subjective bad faith. What's your response to that? So the court applied the correct standard. There's no dispute that the court stated that in order for me to impose sanctions under Rule 11 sua sponte, I'm following Kaplan and the conduct has to be akin to contempt. And the district court did its best to interpret what that meant. But when you look at Kaplan, Kaplan refers you to other circuits  but say that it's the same objective standard, just applied with particular care. There has to be something about the circumstances that are egregious enough to merit sanctions when the court is doing it on its own because there's no safe harbor opportunity to withdraw the statement. And it's similar, in fact, to what this court in Kaplan said is the standard of review for sanctions imposed sua sponte. The standard is, as you know, abuse of discretion, but applied with particular stringency. So it's a higher standard, but higher doesn't change the standard. It doesn't become de novo. It's the same standard here, general reasonableness, but just applied with particular strictness. And the court took that standard. It found that it was not reasonable, but in fact reckless, to make repeated representations of a verifiable fact and a legal argument to dispose of Mr. Smith's Americans with Disabilities Act claim in death penalty litigation where the consequences are more serious, the stakes are higher. None of that is clearly erroneous. And then in terms of subjective bad faith, Second Circuit stands alone, and Your Honor noted the same arguments I've made below that with the history of Rule 11, the drafters omitted in 1983 a subjective standard. They went to objective reasonableness under the circumstances. And as the dissenting judge in Penny said, it's crazy to think that one comment in the advisory committee's notes would change the standard back to what it was just without anything else. And in terms of the text and structure of Rule 11, Rule 11B is one substantive standard, reasonableness under the circumstances. There are procedural distinctions drawn under Rule 11C, whether the party initiates sanctions or whether the court initiates sanctions. But nothing in the text of Rule 11C changes that standard up in Rule 11B. And again, Second Circuit stands alone. And as Judge Wilson noted, the First and the Fifth Circuits later went on to reject Penny and said there's one standard. They don't even quote akin to contempt and just say there's only one standard. Now, Kaplan has this language, but this language can be read in the context that Kaplan intended for it to be read, looked at the other circuits and say it's the same standard applied with particular care or stringency. And if there are no further questions, I will rest on my briefs. Thank you. Thank you. Thank you, Counsel. I'll tell you, Counsel, I'm still troubled by the standard that the court applied and why it was an incorrect standard. And if it was a correct standard, if the standard was akin to contempt, means unreasonable under the circumstances, I'm having a hard time determining how we say the court abused its discretion. Either way. Yes, Your Honor. Two points on that. If the standard for normal Rule 11 sanctions is unreasonable under the circumstances, then relying solely on a finding like that to apply akin to contempt standards is necessarily erroneous because that standard has to be higher. Whether it's subjective or objective bad faith or recklessness, it is really neither here nor there. It would be an error. Now, they did find recklessness. I'll note that in power purchasing involving inherent authority, which is used in situations like contempt, recklessness is not enough typically. So I don't think the recklessness finding... Well, it's enough under 28 U.S.C. Section 1927. Why would it not be enough under Rule 11? Why would there be a difference? Because nothing Ms. Simpson did here looks anything like contempt, Your Honor, and that's why. And second, I don't even see how the court could conclude that this was reckless. Again, we had ample findings. Now, I'd like to address this notion that there was no investigation that happened. Of course, there was an investigation. It happened during Price, but that doesn't mean it becomes irrelevant when Smith comes along. Rule 11 does not impose any reinvent-the-wheel requirement, and Rule 1 would reject it because nothing could be more inefficient than requiring a reinvention of the wheel every time you get a new case. That's why you have entire law firms that specialize in mesothelioma, for example, because those guys know how to try a mesothelioma case, and that's why you go to them so they don't have to start from square one every time they get their next case. And in terms of the inquiry, I think another analogy is useful. Imagine if another judge here in the court right now, Judge Grant's down in her chambers. She wants to know whether oral argument has begun, and she sends a clerk down here to conduct that reasonable inquiry into whether oral argument has begun. And he comes in, sticks his head in, hears you all questioning me, hears me responding, reasonably concludes it's begun, walks back to chambers and says, Judge Grant, oral argument has started. If she then says, well, I've got another inquiry into who is on the panel, there's no need to reconduct the inquiry if the clerk is even mildly observant. He will know that it's the three of your honors. And so there's no need to conduct that inquiry again and run back down the hall. And that's what the district court and amicus appear to be arguing we need to do. Amicus said just a moment ago that the inference that Warden Stewart had been the one who initiated distribution of the form may have been reasonable based on what was gathered in price, but it was no longer reasonable later. Well, why would that be the case? No one suggests that we need to call back as easy as it might have been to say, hey, Warden, Holman's where you keep a lot of the death row inmates, right? And that's where you were keeping a lot of them in 2018, right? And there was no need to call back and confirm that Captain Emberton meant what he swore to in his affidavit. So if we have a reasonable inference to draw from the facts that we knew back in 2018, 2019, all the way up to May of 2021, there's no need to reinvent that wheel and call back and say, hey, Warden, I know you're busy running a maximum security prison, but could you just confirm that what you said here in your sworn interrogatory responses is really what you meant? So, again, there's nothing in the case law suggesting Rule 11 should be read that way. There's nothing in the text of Rule 11 that suggests it should be read that way. And Rule 1— So Rule 11 requires a finding of bad faith, then? Your Honor, since all these sanctions, we have our argument that bad faith would be required. We don't think you need to come anywhere near this because this is—I've never seen a case in any of the cases, a case law, and amicus hasn't identified one either, where there was special support for the assertion— Would recklessness support a finding of Rule 11 violation? We don't think it would, but even if it could, I don't think you have anything close to recklessness here. Again, because Judge Jordan noted, worldwide primates—I've got the exact quote here— in this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous, if you have the facts or law, and then, if they are, whether the person who signed the plea should have been aware that they were frivolous. That is, whether he would have been aware had he made a reasonable inquiry. So we never even get past prong one. There was factual evidence there. The only way that this court could have maybe missed that is by deeming only direct evidence to be sufficient evidence and circumstantial evidence to be no evidence at all, and that's an obvious legal error. The D.C. Circuit dealt with that in Lucas. If someone walks in with a wet umbrella right now, I could reasonably tell this court that it's probably raining outside, that it is raining outside, even if I don't ask him, and we had that sort of strong circumstantial evidence to back up the assertions that we made. And I think Amicus, during her colloquy with you, Judge Jordan, just shows how needlessly wasteful and contentious the district court's approach to Rule 11 would be. I mean, we would have had to have moved forward and impugned the veracity of our own client. We would have had to have federal defenders who wrote this form sit down, and we would have had this needless satellite litigation all in the midst of a preliminary injunction proceeding with an execution date pending. Nothing could be more inefficient and wasteful than that, and that's why Rule 11 was amended in 1993 to provide the safe harbor, to provide the akin to contempt standard, and to make sure that lawyers aren't sanctioned for doing the right thing, like what Assistant Attorney General Lawrence Simpson did here, which was to say, they got it. Previously, the facts as we knew them were undisputed in favor of this proposition, and now they're disputed, but that is lawful conduct that is not sanctionable. It's certainly not akin to contempt of court. Thank you, Counsel. And it's never a pleasant exercise for a court to impose Rule 11 sanctions, and I'm sure it was a very unpleasant thing for the court to do in this case. But the case was well argued, and we appreciate your arguments. And Ms. Graham, you were appointed by the court to defend the court's order, and the court thanks you for your service. Thank you. Court is adjourned. All rise.